UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTONIO LAURENSAINT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALEJANDRO MAYORKAS, Secretary, )<br>Department of Homeland Security; )<br>DEPARTMENT OF HOMELAND SECURITY; )<br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES; )<br>JOANNE SASSONE, Acting Director, )<br>U.S. Citizenship and Immigration Services; )<br>LOREN K. MILLER, )<br>Director of the Nebraska Service Center, )<br>U.S. Citizenship and Immigration Services, )<br>)<br>Defendants. ) | Case No. 1:21-cv-11089<br><br>PETITION FOR A WRIT<br>OF MANDAMUS AND<br>COMPLAINT FOR<br>INJUNCTIVE AND<br>DECLARATORY RELIEF |

I.      **INTRODUCTION**

1. This action arises out of the constitutional, statutory and regulatory violations committed by the Defendants. Plaintiff, Antonio Laurensaint (hereafter "Plaintiff" or "the Plaintiff"), by and through undersigned counsel, challenges the unlawful denial of his Form I-485 Application for Adjustment of Status (hereafter "adjustment application") and Form I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal (hereafter "Form I-212 waiver" or "waiver application"), by the U.S. Citizenship and Immigration Services (USCIS) on October 20, 2020 under section 212(a)(9)(A)(iii) of the Immigration and Nationality Act (INA). (Receipt Nos. MSC2091285390 and MSC 2091285389).

2. Plaintiff entered the United States without inspection in the year 2004. Plaintiff was ordered removed from the United States on December 11, 2006. The Plaintiff was granted Temporary Protected Status ("TPS") on or about May 13, 2010. After being granted Temporary Protected Status, the Plaintiff left the United States in 2017 with authorization from the Secretary of the Department of Homeland Security ("DHS") and was subsequently paroled back into the United States.

3. Plaintiff thereafter applied with the USCIS, a sub-agency of DHS, to adjust his immigration status from Temporary Protected Status to Lawful Permanent Resident ("LPR"). In order to adjust his status, the Plaintiff sought a concurrent waiver on a Form I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal. Defendants denied the Plaintiff's application to adjust his status on September

22, 2020 for lack of jurisdiction and denied the Form I-212 waiver application based on the lack of jurisdiction.

4. Defendants' decision to deny Plaintiff's applications was arbitrary, capricious, and not in accordance with law. The decision constituted *ultra vires* agency action insofar as it was a direct violation of the language of the regulation.

## II.   JURISDICTION AND VENUE

5. This case arises under the Immigration and Nationality Act (hereinafter "INA"), 8 U.S.C. § 1101 *et seq.*, the Administrative Procedure Act (hereinafter "APA"), 5 U.S.C. § 551 *et seq.*, and the regulations governing the INA and the APA.

6. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States, and the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361. The Court may grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202, the Federal Declaratory Judgment Act; 5 U.S.C. § 702, the Administrative Procedures Act; and 28 U.S.C. § 1361, the Mandamus and Venue Act of 1962.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States, or agencies thereof, acting in their official capacities, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Plaintiff resides in this District. No real property is involved in this action.

## III.   PARTIES

8. The Plaintiff Antonio Laurensaint is a citizen and national of Haiti who is the spouse of a U.S. citizen and the beneficiary of an approved I-130 Petition for Alien Relative. He resides

in Massachusetts with his wife, Farah Laurensaint. His mother, Solange Ducarme is a U.S. citizen who relies on his regular financial and physical support. He entered the United States without inspection in May 2004. The Plaintiff was ordered removed from the United States on December 11, 2006. The Plaintiff was granted Temporary Protected Status on or about May 13, 2010. After being granted Temporary Protected Status, the Plaintiff left the country with authorization from the Secretary of the Department of Homeland Security and was subsequently paroled back into the United States. Plaintiff applied with USCIS to adjust his immigration status to Lawful Permanent Resident ("LPR"). The Plaintiff sought a concurrent waiver pursuant to a Form I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal.

9. Defendant Alejandro Mayorkas is the Secretary of Department of Homeland Security, an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). In this capacity, he is responsible for the administration of the INA and for overseeing, directing, and supervising all DHS component agencies, including USCIS. He is sued in his official capacity.

10. Defendant Department of Homeland Security is an executive agency of the United States and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). Since March 1, 2003, DHS has been the agency responsible for implementing the INA, including provisions relating to waivers of inadmissibility.

11. Defendant Joanne Sassone is the Acting Director of United States Citizenship and Immigration Services, an "agency" within the meaning of the APA, 5 U.S.C. §551(1). In this capacity, she oversees the adjudication of immigration benefits and establishes and implements governing policies. 6 U.S.C. § 271(a)(3); 6 U.S.C. § 271(b). She is ultimately responsible for the adjudication of waiver applications. She is sued in her official capacity.

12. Defendant United States Citizenship and Immigration Services is a component of DHS, 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for adjudicating immigration benefit applications.

13. Defendant Loren K. Miller is the Director of the Nebraska Service Center, the office within USCIS which processed and denied Plaintiff's waiver application. He is sued in his official capacity.

IV.  **STATEMENT OF FACTS**

14. The Plaintiff is a citizen and national of Haiti who entered the United States without inspection in May 2004.  The Plaintiff was ordered removed from the United States on December 11, 2006.

15. On January 12, 2010, the Secretary of Department of Homeland Security designated Haiti under the status allowing for Temporary Protected Status which currently extends until October 4, 2021.  85 Fed. Reg. 79,208 (Dec. 9, 2020).

16. The Plaintiff was granted Temporary Protected Status on or about May 13, 2010.

17. On December 19, 2016, Plaintiff married his long-time girlfriend Farah Brunache (now Laurensaint), a U.S. citizen. Farah filed an I-130 Petition for Alien Relative on his behalf which was approved by USCIS on April 6, 2018.

18. While in Temporary Protected Status ("TPS"), the Plaintiff left the country with authorization from the Secretary of the Department of Homeland Security ("DHS") and was subsequently paroled back into the United States on May 27, 2018.

19. Plaintiff thereafter applied with the United States Citizenship and Immigration Services ("USCIS"), a sub-agency of DHS, to adjust his immigration status from Temporary Protected Status to Lawful Permanent Resident ("LPR") by filing a Form I-485 Application to Register Permanent Residence or Adjust Status.

20. USCIS has the legal authority to adjudicate most adjustment of status cases. An immigration judge of the Executive Office for Immigration Review (EOIR) has jurisdiction in certain situations.  See 8 CFR § 245.2(a)(1) and 8 CFR § 1245.2(a)(1).

21. In order to adjust his status, the Plaintiff sought a concurrent waiver pursuant to a Form I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal.

22. A TPS beneficiary who obtains authorization from United States Citizenship and Immigration Services to travel abroad temporarily (as evidenced by an advance parole document) and who returns to the United States in accordance with such authorization "shall be inspected and admitted in the same immigration status the beneficiary had at the time of departure" unless the beneficiary is determined to be inadmissible based on certain criminal and security bars (TPS bars) listed in INA § 244(c)(2)(A)(iii). See Section 304(c)(1)(A)(ii) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (MTINA), 105 Stat. 1733, 1749 (December 12, 1991), as amended.

23. On December 20, 2019, the DHS issued Policy Alert 2019-12, "Effect of Travel Abroad by Temporary Protected Status Beneficiaries with Final Orders of Removal" the stated purpose of which was to update the USCIS Policy Manual to clarify the effect of travel outside the United States by TPS beneficiaries who have final removal orders.  See INA § 244(a)(1)(A).

24. According to this update, according to the Immigration and Nationality Act (INA), TPS beneficiaries may not be removed from the United States while they have TPS. In addition, section 244(f)(3) of the INA permits TPS beneficiaries to travel abroad with prior authorization to travel from the Secretary of Homeland Security. Based on this statute and corresponding regulations, USCIS issues advance parole documents to TPS beneficiaries whose requests for authorization to travel abroad are approved.

25. The policy update "clarified" that, unless certain TPS bars apply, a TPS beneficiary who obtains USCIS' authorization to travel abroad temporarily (as evidenced by an advance parole document) and who departs and returns to the United States in accordance with such authorization remains in the same exact immigration status and circumstances as when he or she left the United States. Such travel does not result in the execution of any outstanding removal order to which a TPS beneficiary may be subject. The guidance, contained in Volume 7 of the Policy Manual, is controlling and superseded any prior guidance on the topic. Section 304(c)(1)(A)(ii) of MTINA, 105 Stat. 1733, 1749 (December 12, 1991), as amended.

26. Defendant found the Plaintiff was ineligible to adjust status and USCIS lacked jurisdiction under the then current USCIS policy on TPS because TPS beneficiaries who had outstanding, unexecuted final removal orders at the time of departure, remain TPS beneficiaries who continue to have outstanding, unexecuted final removal orders upon lawful return. Volume 7: Adjustment of Status, Part A, Adjustment of Status Policies and Procedures, Chapter 3, Filing Instructions, Section D, Jurisdiction [7 USCIS-PM 4.3(D)]. Defendants reasoned that Plaintiff had an outstanding, unexecuted final removal order. <u>See</u>

section 304(c)(1)(A)(ii) of MTINA, 105 Stat. 1733, 1749 (December 12, 1991), as amended.

27. On September 22, 2020 Defendant USCIS denied the Plaintiff's I-485 Application to Register Permanent Residence or Adjust Status because of lack of jurisdiction due to the Plaintiff's prior entry into the United States as an entry without inspection and the Plaintiff being subject to an outstanding, unexecuted final removal order. No appeal was available from this decision.

28. On October 22, 2020, Defendant USCIS denied the Plaintiff's concurrently filed waiver application because it determined since United States Citizenship and Immigration Services lacked jurisdiction over and had denied the Plaintiff's adjustment of status application, no purpose would be served by granting the waiver application. The Defendants provided the Plaintiff an appeal to the Administrative Appeals Office of USCIS within 33 days of the decision or alternatively file a motion to reconsider or reopen.

29. At present, the Plaintiff remains subject to a removal order.

## V. FINAL AGENCY ACTION AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

30. There are two requirements for an agency's action to qualify as final. First, the action may not be tentative or interlocutory in nature but must represent the consummation of the agency's decision making process. *Bennett v. Spear*, 520 U.S. 154, 178 (1997). Second, it must be an action by which rights or obligations have been determined, or from which legal consequences will flow. *Id.* (quotations omitted). Because the decision in this case has "direct and appreciable legal consequences" for both parties, it is final. *Id*. The Defendants denied the Plaintiff's I-485 application to adjust status with the explicit statement that "you

may not appeal this decision." The Defendants then based the denial of the Form I-212 waiver application on the denial of the Form I-485 application to adjust status. The effect of the combined decisions is to foreclose any additional avenues of administrative relief. Here, Defendants' denial of the Plaintiff's Form I-212 Application was a final agency decision because of the direct and appreciable legal consequences for both parties and due to there not being an appeal available for the underlying adjustment application.

31. Furthermore, "as a general matter, Congress does not intend for the availability of additional avenues of administrative relief to prevent federal agency action from counting as "final" agency action under the APA. *See* 5 U.S.C. § 704; *Darby v. Cisneros*, 509 U.S. 137, 154 (1993). The APA provides in some limited circumstances that an agency action is not final precisely because an agency rule or a statute requires that the agency action must be reviewed administratively. *Id*. And, in such circumstances, the required administrative review both imposes an exhaustion requirement and makes plain that the underlying agency action is not a final one. See *Darby*, 509 U.S. at 154. *Global Tower Assets, LLC v. Town of Rome*, 810 F. 3d 77, 86 (1st Cir. 2016).

32. In order to impose an exhaustion requirement, an agency rule must be explicit as to the required administrative review. *See, e.g. Ciba-Geigy Corp. v. Sidamon-Eristoff*, 3 F.3d 40, 45 (2d Cir. 1993) (distinguishing *Darby* where the EPA adopted regulations creating express exhaustion requirements. For issuance of a permit, appeal to the EAB is a "prerequisite to the seeking of judicial review of the final agency action. 40 C.F.R. § 124.19(e)).

33. Clear, explicit exhaustion requirements abound in the Code of Federal Regulations. *See, e.g.* 33 CFR § 331.12 (No affected party may file a legal action in the Federal courts based

on a permit denial or a proffered permit until after a final Corps decision has been made and the appellant has exhausted all applicable administrative remedies under this part. The appellant is considered to have exhausted all administrative remedies when a final Corps permit decision is made in accordance with § 331.10.); 43 CFR 4.21(c) (Exhaustion of administrative remedies. No decision which at the time of its rendition is subject to appeal to the Director or an Appeals Board shall be considered final so as to be agency action subject to judicial review under 5 U.S.C. § 704, unless a petition for a stay of decision has been timely filed and the decision being appealed has been made effective in the manner provided in paragraphs (a)(3) or (b)(4) of this section or a decision has been made effective pending appeal pursuant to paragraph (a)(1) of this section or pursuant to other pertinent regulation.)

34. While there is a route of administrative review of the Form I-212 waiver application, there is not a route of administrative review of the Form I-485 application to adjust status. It is not clear what the requirements are for administrative review when one application has a route but one application does not have such a route. Here, there is no clarity about the required explicit language demanded by *Darby* to impose an exhaustion requirement.

35. Here the applicant is left with no administrative review. Without an explicit imposition of an exhaustion requirement in the regulation as required by *Darby*, the only conclusion is that there is no such requirement. Consequently, the denial of Plaintiff's Form I-485 and Form I-212 waiver application should be considered a final decision and therefore renders it eligible for immediate review by the Court.

**VI. PETITION FOR A WRIT OF MANDAMUS**

All the foregoing allegations in paragraphs 1 to 35 are repeated and realleged as though fully set forth herein.

36. Mandamus is available to compel a federal official or agency to perform a duty if: (1) there is a clear right to the relief requested; (2) defendant has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available. *See* 28 U.S.C. § 1361.

37. Plaintiff may apply to adjust his status to Legal Permanent Resident Status. 8 U.S.C. §§ 1254a(a), 1254a(b).

38. Regulations promulgated by DHS provide that jurisdiction over adjustment applications lies either with USCIS or with an immigration judge. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1). 8 C.F.R. § 1245.2(a)(1)(i) provides that "[i]n the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.  As to an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate an application for adjustment of status unless certain conditions are met. *Id*. § 1245.2(a)(1)(ii). Section 245.2 provides that "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 C.F.R. § 1245.2(a)(1)."

39. The Immigration Act of 1990 provides that individuals with Temporary Protected Status "may travel abroad with the prior consent of the Secretary." *Id*. § 1254a(f)(3). A technical amendment enacted the following year to ensure that substantive reforms enacted by the act would be "more logical, easier to implement, and fairer for all," see 137 Cong. Rec. 34,791 (1991), provides for return from such authorized travel "in the same immigration

status the alien had at the time of departure." Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA") § 304(c), Pub. L. No. 102-232, 105 Stat.1733, 1749 (1991) (codified at 8 U.S.C. § 1254a note).  Plaintiff's immigration status when he left for travel was Temporary Protected Status, and that was the same status upon his return.

40. To be allowed to travel, Plaintiff had to file an "Application for Travel Document, Form I-131." 8 C.F.R. § 223.2 ("applicant must submit an application ... on the form designated by United States Citizenship and Immigration Services"); *Id*. § 106.2 (designating Form I-131 as relevant application). When such an application is granted, DHS issues the alien an Authorization for Parole of an Alien into the United States, Form 1-512L, which allows the alien to present himself to an immigration for inspection at a port of entry.

41. The Immigration Act of 1990 authorizes Temporary Protected Status beneficiaries to travel abroad with the prior consent of the [Secretary] 8 U.S.C. § 1254a(f)(3), it does not specify the method by which this is to be accomplished.

42. MTINA contemplated that returning aliens with Temporary Protected Status would be "admitted in the same immigration status the alien had at the time of departure." MTINA, § 304(c)(1)(A)(i).

43. DHS regulations require noncitizens with Temporary Protected Status to apply for "advance parole" before leaving the United States. 8 C.F.R. § 244.15 ("Permission to travel may be granted by the director pursuant to the Service's advance parole provisions").

44. Persons paroled into the United States, as well as those who are denied entry at a port of entry, are referred to as "arriving aliens." 8 C.F.R. § 1.2

45. Both the person who presents himself for inspection and is not admitted and the person who is paroled into the United States are treated as if they are inspected but remain outside of the United States at a port of entry. See *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (articulating the entry fiction doctrine, i.e., that immigration parole creates a legal fiction wherein the paroled alien is considered to be standing at the border despite physical entry into the country).

46. Here, Plaintiff left the United States on a grant of advance parole.

47. Once the Plaintiff arrived at the border, the DHS regulations do not distinguish between an individual entering on parole and an individual who was granted parole in advance of a departure from the United States. 8 C.F.R. § 212.5.

48. Plaintiff was inspected and paroled and is an arriving alien.

49. The Immigration Judge does not have jurisdiction. 8 C.F.R. § 1245.2.

50. United States Citizenship and Immigration Services has jurisdiction.

51. United States Citizenship and Immigration Services finding that it lacked jurisdiction runs contrary to the congressional intent and plain language of the regulation and can be set aside pursuant to the APA.  5 U.S.C. § 706.

52. Defendants' action harms Plaintiff as he has no way of adjusting his status without first receiving a decision on the Form 212 waiver eligibility and merits.

53. The Supreme Court's recent decision in *Sanchez v. Mayorkas*, No. 20-315, 2021 U.S. LEXIS 2960 (June 7, 2021) which addressed whether the grant of TPS itself was a sufficient inspection and admission for the purposes of adjustment of status does not have any bearing on this case. That case did not address jurisdiction over the adjustment application and waiver of prior removal order. The Court even specifically stated in its

opinion that "We express no view on whether a parole … enables a TPS recipient to become an LPR absent any other bar…" *Id*. at *8 n.4. In sum, it was addressing a completely separate if proximate question.

54. There are no other adequate available remedies.

## VII. FIRST CLAIM FOR RELIEF (Injunctive Relief)

All the foregoing allegations in paragraphs 1 to 54 are repeated and realleged as though fully set forth herein.

55. This is an action for injunctive relief against Defendants. A *bona fide* dispute has arisen between Plaintiffs and Defendants regarding Plaintiff status as an eligible alien for a waiver pursuant to a Form I-212 Application.

56. Injunctive relief is available through non-statutory review. *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 59 (1st Cir. 2007) (The basic premise behind non-statutory review is that, even after the passage of the APA, some residuum of power remains with the district court to review agency action that is *ultra vires*.) (quoting *R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 42 (1st Cir. 2002)); *R.I. Dep't of Envtl. Mgmt.* 304 F.3d 31 at 40 (As a general matter, there is no statute expressly creating a cause of action against federal officers for constitutional or federal statutory violations. Nevertheless, our courts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringements of federal rights. Such actions are based on the grant of general federal-question jurisdiction under 28 U.S.C. §1331 and the inherent equity powers of the federal courts." (citations omitted).

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendants and that the Court:

a. Find that the Defendants' denial of Plaintiff's application was *ultra vires* to the express language of the regulation;

b. Enjoin and restrain Defendants during the pendency of this action and thereafter permanently from taking further steps to unlawfully classify Plaintiff as an ineligible alien in the context of the waiver pursuant to a Form I-212 application;

c. Compel Defendants to vacate the decision denying Plaintiff's Form I-485 adjustment application and Form I-212 waiver, order USCIS to adjudicate the waiver on its merits and the adjustment of status application; and

d. Award all other such relief to Plaintiff as this Court deems just, proper, and equitable.

## VIII. SECOND CLAIM FOR RELIEF (Declaratory Relief)

All the foregoing allegations in paragraphs 1 to 56 are repeated and realleged as though fully set forth herein.

57. This is an action for declaratory relief pursuant to 27 USC § 2201. A *bona fide* dispute has arisen between Plaintiff and Defendants regarding the legal sufficiency of the Defendants' decision to deny Plaintiff's waiver pursuant to a Form I-212 and Plaintiff has been prejudiced by the Defendants' decision, as described above.

**WHEREFORE**, Plaintiff requests that judgment be entered in favor of Plaintiff and against Defendants, and that the Court:

a. Declare that Defendants' refusal to adjudicate the Form 212 waiver, is contrary to 8 C.F.R. § 212.7(a)(1);

    b. Declare that Plaintiff was an "arriving alien" at the time of filing his Form I-485 adjustment application and Form 212 waiver;

    c. Order Defendants to reopen and properly adjudicate the Form 212 waiver application; and

    d. Award all other such relief to Plaintiff as this Court deems just, proper and equitable.

### IX. THIRD CLAIM FOR RELIEF (Violation under Administrative Procedures Act)

All the foregoing allegations in paragraphs 1 to 57 are repeated and realleged as though fully set forth herein.

58. This is an action for relief pursuant to the Administrative Procedure Act, 5 USC §706 ("APA"). Defendants' decision to deny Plaintiff's application was arbitrary, capricious, and not in accordance with law.

**WHEREFORE**, Plaintiff requests that judgment be entered in favor of Plaintiff and against Defendant, and that the Court:

    a. Hold unlawful and set aside Defendants' denial of Plaintiff's application for a Form 212 waiver;

    b. Direct Defendants to comply with 8 C.F.R. § 212.7(e) and reopen and re-adjudicate Plaintiff's application; and

    c. Award all other such relief to Plaintiff as this Court deems just, proper, and equitable.

## X. FOURTH CLAIM FOR RELIEF (Attorneys' Fees and Costs Pursuant to 28 USC §2412)

All the foregoing allegations in paragraphs 1 to 58 are repeated and realleged as though fully set forth herein.

59. This is an action for attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 USC § 2412.

60. If Plaintiff prevails in this action, he will be eligible to receive an award under the EAJA, 28 USC §2412(d)(1)(A), (2)(H).

61. The position of Defendants was not and is not substantially justified under the EAJA, 28 USC §2412(d)(1)(A).

**WHEREFORE**, Plaintiff requests that the judgment be entered in his favor and against Defendants and that the Court:

a. Enter a judgment awarding Plaintiff his reasonable attorneys' fees and costs pursuant to the EAJA; and

b. Award all other such relief to Plaintiff as this Court deems just, proper, and equitable.

Dated: June 30, 2021

**ARAUJO & FISHER, LLC**

/s/ Annelise Araujo
Annelise Araujo, Esq.
75 Federal Street, Suite 910
Boston, MA 02110
(t) 617-716-6400
(f) 617-716-6403
annelise@araujofisher.com
BBO No. 669913

/s/ <u>Stefanie Fisher</u>
Stefanie Fisher, Esq.
75 Federal Street, Suite 910
Boston, MA 02110
(t) 617-716-6400
(f) 617-716-6403
stefanie@araujofisher.com
BBO No. 676653